Deaee, Cb. J.,
delivered tbe opinion of tbe court:
At tbe December term, 1868, of tbis court, judgment was rendered in tbis case for tbe claimants,, from wbicb tbe defendants appealed to tbe Supreme Court.
On tbe 20th of May, 1869, after tbe appeal was taken, tbe defendants moved for a new trial, and in support of that motion filed a statement of tbe Assistant Attorney General, in tbe following words:
“That from information derived from reliable sources, since tbe last bearing in tbis case, tbe Assistant Attorney General confidently believes (and in fact has no doubt) that be can prove incontestably that claimants voluntarily presented tbeir claims involved in tbis case to tbe commission of Davis, Holt, and Campbell, for tbe consideration of said' commission; that on presenting said claims before that commission, tbe claimants filed or furnished to tbe commission copies of tbeir vouchers, *46 and. fcbat afterward the commission sent a communication to the claimants, requiring the original vouchers to be produced; and thereupon the claimants produced to the commission the original vouchers; and to accomplish this end no force was offered or threatened; that it was after the investigation of this claim had been begun that, by order of General Halleck, a squad of soldiers went to the house of Child, Pratt & Fox, and seized, and took before the commission, the books and correspondence of claimants ; and at that time no original vouchers were taken, unless it may have been some few which were accidentally left behind when the body of the vouchers were voluntarily sent over; that he farther believed, on information, that claimants appeared before the commission by attorney, and in person by at least one of the firm, and were allowed to produce all the testimony they desired, and to cross-examine the witnesses for the United States, and that they did in fact produce witnesses, whose testimony was received by the commission, and did cross-examine some of the witnesses who testified against them.”
This motion was overruled, and the case remained pending-in the Supreme Court on the appeal.
On the 8th of November, 1870, the defendants filed a second motion for a new trial, based upon the following- statement of the Assistant Attorney General:
“ Since this case was heard and decided' in this court, the Supreme Court have heard and decided a similar case, to an effect which gives great and unexpected importance to a fact which can be indisputably established- in this case, namely, that this claim was by the claimants voluntarily-submitted to the commission named in the findings of the court in this case. And of additional evidence, the defendants now offer the following, namely, a certified copy of the record of said commission,. which shows the following facts : 1. That this claim was before said commission before the seizure of books and papers found by the court; 2. That the claimants called and examined witnesses in the hearing before said commission; 3. That one of the claimants appeared as a witness in said case, and submitted himself to examination.”
The grounds of these two motions are thus stated at length, that their substantial identity may appear. The fact which each looks to the introduction of in evidence, if .a new trial be *47 granted, is that the claimants voluntarily submitted ther claim to the Davis, Holt, and Campbell commission. The only observable differences between the two motions are, 1. That the pending motion, unlike the former, alleges “the great and unexpected importance” given by a decision of the Supreme Court in a similar case to the fact of the voluntary submission of their claim by the claimants to the commission; and 2. The exhibition, in connection with the present motion, of certain “ additional evidence,” upon which the defendants rely to j>rove the fact of such voluntary submission. That additional evidence consists of extracts from the records of the commission, detached from and unaccompanied with their context.
Waiving all questions as to the admissibility of this evidence in the form in which it is presented, we have examined these extracts, ancl find that if admitted in evidence on a new trial' they would tend to jn-ove the three subordinate facts enumerated in the motion; but we also find that those facts, if proved, would not establish the main fact of a voluntary submission.
Neither the fact “ that the claimants called and examined witnesses in the hearing before said commission,” nor the fact “that one of the claimants appeared as a witness in said case, and submitted himself to examination,” would, if proved, raise a presumption of a voluntary submission; for either or both of those acts might well have been done under the duress we found to have been exercised upon the claimants by the previous acts of the commission and the military authorities. When such duress is proved, no act of the claimants in the premises is to be considered voluntary, unless clearly proved to have been so.
The other enumerated fact proposed to be established by the additional evidence, to wit, “that the claim was before the commission before the seizure of books and papers found by the court,” is the only one of the three enumerated facts which • would appear in any degree to tend to prove a voluntary submission ; but even that appearance will not bear scrutiny. Whether there was a voluntary submission does not depend on the point of time at which the claim went before the commission, but upon how it got there. In ascertaining how it got there, the time when might have weight in connection with other facts $ but standing alone, it would not necessarily have *48 controlling force. If tbe claimants, of tlieir own free will and accord, submitted tbeir claim to tbe decision of tbe commission, the time when they did so is not essential. If not, tbe time when tbe claim was first before tbe commission would, as to this question, be of quite as little importance.
In fact, as shown by tbe extracts from tbe journal of tbe commission, tbe point of time at which tbe commission first took cognizance of tbe existence of tbe claim wras on tbe 20th of November, 1861, when the following entry was made upon that journal:
“A letter was written and sent to Major General Hállenle, commanding tbe Department of tbe West, relating to inclosed affidavits made for tbe purpose of having tbe books, correspondence, &c., of Child, Pratt & Fox, and Keiler & Co., taken possession of, so that tbeir claims now before this board might be justly examined.”
From this it appears that tb.e claim was then before the commission, but it does not appear bow it got there, much less that tbe claimants voluntarily took it there. On tbe contrary, tbe presumption, from tbe terms of that journal entry, is against that fact; for, if tbe claimants had voluntarily brought it before tbe commission, it is hardly supposable that they would, by refusing to tbe commission access to tbeir books and papers, have made tbeir seizure by military force necessary.
It further appears, by tbe extracts from tbe journal, that, on tbe 7th of December, 1861, tbe commission received from General Halleck tbe desired order of seizure; and that, on tbe 9th of that month, “tbe books, papers,invoices, correspondence,” &c., of tbe claimants, “ taken possession of by tbe provost marshal, were delivered to the commissioners for examination.” What day tbe seizure took place does not appear j but it is sufficient for tbe present purpose to know that it was on or before the 9th of December, 1861.
There is no evidence offered that, prior to that date, tbe claimants, or either of them, were before tbe commission in person, or by representative, or that they submitted tbeir claim to tbe commission, either orally or in writing.
On tbe 13th of December is tbe first entry in tbe journal indicating tbe appearance of any of them before tbe commission. On divers days thereafter they appeared and cross-examined witnesses produced against them, and examined witnesses *49 brought in by themselves; and, on the 0th of March, 1862, P. A. Child, a member of their firm, was examined as a witness before the commission; but whether he was called on behalf of the claimants, or of the government, does not appear.
This review of the evidence proposed to be introduced by the-defendants, if a new trial be allowed, shows that it would fail to establish the main fact of a voluntary submission of their claim by the claimants to the commission.
Their first appearance there, so far as we have evidence, was after, and presumably in consequence of, the seizure of their books and papers j and no such appearance can justly be regarded as voluntary. We therefore do not find in the evidence relied on to prove a voluntary submission any ground for awarding a new trial.
But even if it tended to establish the fact of voluntary submission, it was not claimed in the first motion for a new trial, nor is it in the present one, that this is newly-discovered evidence. On the contrary, from its character, it must have been, at all times since this suit was brought, well kho.wn to the government., We adhere to the rule we have heretofore laid down, that a new trial will not be granted where, by the use of due diligence, the evidence relied upon as a ground therefor might have been discovered in time to be produced at the trial. (Garrison v. United States, 2 C. Cls. R., 382.) Much more should a party be held to such production when the evidence is in his exclusive possession, and needs only his own act to produce it.
But we are asked to sustain this motion because “ since this case was heard and decided in this court, the Supreme Court have heard and decided a similar case, to an effect which gives great and unexpected importance to a fact which can be indisputably established in this case.” The fact which has thus come to receive “ great and unexpected importance” is the alleged voluntary submission. Passing by the conclusion we have expressed as to the duty of the defendants to have brought that fact out on the trial, we will consider the matter upon the simple ground stated, namely, the “great and unexpected importance” of the fact to the defendants’ case. This importance arises, not from any change in the character of the fact itself, or in the other facts of the case, or in its relation to those facts, but from a decision given by the Supreme Court, which, if it had been rendered previous to the trial, would have caused *50 the defendants to give evidence of tbe fact; whereas, on the trial, though they knew of the fact all that they know now, they did not take the view of the law as to its importance which the Supreme Court afterward expressed, and therefore did not attempt to prove it. In other words, the defendants’ counsel find that at the trial they made a mistake as to the law, and they ask a new trial that they may rectify that mistake. This is a ground for a new trial unknown to any system of jurisprudence with which we are acquainted. In Schlesinger v. United States, (1 C. Cls. R., 16,) we held that duties on imported goods, paid without protest under a mutual mistake of the law by both the importer and the collector of customs, could not be recovered back by the importer. If in any case one could be permitted to avail himself of his mistake of the law, it should be in such a case as that, where* the mistake was common to both parties to the transaction. But courts are not constituted to relieve parties from the effects of mistakes of law. Litigants take on each side the risk of such mistakes. The government is as much bound to know the law as claimants are. There is no law which requires us to give the government an advantage over claimants on the ground of the mistakes of its officers as to the law; but, on the contrary, under the laws establishing this court and defining its jurisdiction, the government voluntarily places itself here as a defendant, to be dealt with ordinarily on the same principles of law as are applied to claimants. There is not here one law for a claimant and another law for the government, but the same law for both.
Furthermore, the law which the Supreme Court declared in the case referred to was as much the law when that case was tried here as it was after that court declared it; the only difference was, that until it was so declared it had not received the final and conclusive decision of the court of last resort. This motion seems to proceed upon the opposite idea, that the law as declared by the Supreme Court was new law, which the government was not bound to know until it was so declared. Such an idea is, of course, indefensible. The fact, then, that the defendants’ counsel did not, on the trial of this case, hold the law to be as the Supreme Court afterward pronounced it, and therefore omitted to make the proof now sought to be let in, though they knew the facts as well then as they know them now, does not warrant the granting of a new trial.
*51 It is, however, insisted for the defendants that this is a case coming witbin the remedial purview of tlie second section of the 'Act 25th June, 1808, (15 Stat. L., p. 75,) “to provide for appeals from the Court of Claims, and for other purposes,” which is in the following words :
“That said Court of Claims, at any time while any suit or claim is pending before, or on appeal from, said court, or within two years next after tlie final disposition of any such suit or claim, may, on motion on behalf of the United States, grant a new trial in any such suit or claim and stay tlie payment of any judgment therein, upon such evidence (although the same may be cumulative or other) as shall reasonably satisfy said court that any fraud, wrong, or injustice in the premises has been done to the United States.”
It is not assumed by the counsel for the defendants that any fraud was practiced upon the government by the claimants in obtaining judgment in this case; nor that any wrong has been done by them therein, aside from such as may result from error in the judgment on the merits of the case. Whether there was wrong of that description, is the very question to be decided by the Supreme Court on the appeal, and, it is not now an open question here. We await the judgment of that court on that point.
But it is claimed that “injustice,” within the intent and meaning of that section, has been done to the defendants, and that this court is authorized, if not required, for that reason, to grant a new trial.
This point, like the others, is connected with the evidence proposed to be introduced to prove the fact of a voluntary submission. Though, as we have shown, that evidence, so far as presented here, would be insufficient to establish that fact, yet we will consider it; and what do we find 1 Simpty that the alleged injustice results solely from the omission of defendants’ counsel to offer at the trial the very evidence now sought to be introduced, though it avus as well known to the defendants and their counsel then as now; was then, as now, in their possession; and could as well then have been introduced as it could now be on a new trial. If its non-introduction at the trial was an injustice to the defendants, it was inflicted by their own officers, arid not in any measure by the claimants. We know of no law which would allow a party thus to take advantage of *52 Ms own laclies. The simple design of this section, 'as it appears to us, is to protect the government against unconscionable advantages gained over it, without laches or mistake on the part of its officers; not to give it • unconscionable advantages over claimants through such laches or mistake.
It is easier to say what is not than what is, “injustice,” within the meaning of this section. It is necessarily a case of first impression, upon which we can derive little light from the common law. But, after as careful reflection as we could bestow, the following are our views, so far as this case requires their expression :
There may be injustice to the United States in a judgment which would by the appellate court be found -erroneous ; but that does not seem to us to be the description of injustice meant by this section, for the following reasons: 1. Because an appeal is provided by law as the means of rectifying such error; 2. Because the motion for a new trial is, by this section, allowed to the government after the case has been removed to the Supreme Court by appeal, as well as before, when, if it had been intended to perform the office of a quasi writ of error coram nobis, it should by all rules precede the appeal in every case; and 3. Because this section provides that the motion is to be granted upon evidence; which evidence must reasonably satisfy this court that fraud, wrong, or injustice has been done to the United States. This requirement of evidence in support of the motion seems to us necessarily to imply evidence that was not before the court at the trial; for, if it had been there, it is not supposable that the cpunsel for the government would have failed to direct attention to it, or that the court would, without passing directly upon its weight and effect, have rendered a judgment against the government.
If these views be correct, then it is clear to ns that two conclusions follow: 1. That the injustice contemplated by this section is not that which results from mere judicial error, which the Supreme Court may rectify on appeal; and 2. That it must be such injustice as was discovered after the rendition of the judgment.
We do not, therefore, see in this section any authority— much less requirement — to award a new trial to the defendants on the ground of injustice, because at the trial their counsel *53 held back evidence which, was equally within their knowledge and their power to produce. I
One other question arises, which should be considered, to wit, whether a second motion for a new trial ought to be entertained.
Without undertaking to decide that point as to a second motion, different from one previously overruled, we have no difficulty in holding that a second motion, based on,the same grounds as the preceding one, ought not to be considered. The denial of the first makes the matter res adjudicata,; and if we can be called upon once to review our judgment on that point, why not a dozen times ? This view will appear peculiarly applicable to this case when it is observed 'that the decision of the Supreme Court, referred to in the pending motion as giving “great and unexpected importance” to the fact proposed to be proved on a new trial, was rendered before the former motion was filed, and, doubtless, led to its being made. This, then, is simply a case of a second motion resting upon the same grounds as a previous one, which was overruled. Such a motion cannot be entertained.
The motion is overruled.