**CONNECTICUT VALLEY ENTERPRISES, INCORPORATED**

v.

**The UNITED STATES.**

**No. 505-57.**

United States Court of Claims.

July 16, 1965.

George B. Finnegan, Jr., New York City, for plaintiff; Marcus B. Finnegan, Washington, D. C., attorney of record; Hobart N. Durham, Jerome G. Lee, Warren H. Rotert, and Morgan, Finnegan, Durham & Pine. New York City, of counsel.

William D. Hall, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant. Henry Van Arsdale and Elliott I. Pollock, Washington, D. C., of counsel.

Before LARAMORE, Acting Chief Judge, DURFEE, DAVIS, and COLLINS, Judges, and WHITAKER, Senior Judge.

## PER CURIAM:

Pursuant to former Rule 45(a) (now Rule 57(a)), this case was referred to Trial Commissioner Donald E. Lane with directions to make findings of fact and a recommendation for the conclusion of law. The commissioner has done so, supported by an opinion filed on June 7, 1963. The plaintiff has excepted to the commissioner's recommendation for the conclusion of law to be entered and to certain of his findings of fact. Defendant has also excepted to the commissioner's failure to make certain findings. The parties have filed briefs and the case has been argued orally. The court agrees with the commissioner's findings, his opinion, and his recommended conclusion of law as hereinafter set forth, and hereby adopts the same as the basis for its judgment in this case. In accordance therewith, the court concludes as a matter of law that claim 5 of United States Letters Patent No. 2,718,568 is invalid. Judgment is entered to that effect and plaintiff's petition is dismissed.

## OPINION OF COMMISSIONER

This is a claim for compensation under 28 U.S.C. § 1498, for the unauthorized use and manufacture by and for the United States of a patented invention.

The subject matter of this case concerns a rotary relay disclosed in United States Letters Patent 2,718,568, granted to Connecticut Valley Enterprises, Inc., September 20, 1955, on an application by Brock A. Somers. The patent disclosure, the patent claim in suit, and the accused relays used by the defendant are described in the accompanying findings of fact. The several issues of law involved are discussed in the following comments.

■ One of the important issues raised by the proofs in this case is, under what circumstances may a device which has been developed by another prior to the invention by the patentee, be considered as a part of the prior art for the purpose of invalidating the patent. Struthers-Dunn, Inc., one of defendant's suppliers, had developed three relays which were either anticipatory or had important anticipatory features of the patent in suit prior to the invention date of the patentee. One of these, the #212 relay (defendant's exhibit 61), was tested and approved by a prospective purchaser, and was the object of an intensive sales effort with respect to that purchaser, prior to the invention by the patentee. Another, the #220 D.C. relay (defendant's exhibits 57, 58 and 10), was being sold and was in mass production prior to the invention by the patentee. The third, the #220 A.C. relay (defendant's exhibits 3 and 88), had been developed and tested by Struthers-Dunn, and a sample had been delivered to the Air Force prior to the invention by the patentee. A fourth relay, a modified #212 relay (defendant's exhibit 60), was also developed by Struthers-Dunn, Inc., under a government contract at about the time of the patentee's invention; however, the evidence does not establish that this relay was developed prior to the patentee's invention. The pertinent statute governing this issue is 35 U.S.C. § 102, which reads in part as follows:

> A person shall be entitled to a patent unless—(a) the invention was known or used by others in this country, * * * before the invention thereof by the applicant for patent, * * *.

This court has set forth that the burden of proving the facts of a prior knowledge defense is on the defendant and every reasonable doubt must be resolved against him. Badowski v. United States, 164 F.Supp. 252, 143 Ct.Cl. 23 (1958). In the instant case the defendant has met the burden with clear and convincing evidence of operable anticipatory devices which were accessible to the public prior to the Somers invention.

■ The prior knowledge or use must be of a complete and operative device. Mere acquaintance with the inven-

tion is not enough if there is no reduction to practice. Badowski v. United States, supra; Block v. Nathan Anklet Support Company, Inc., 9 F.2d 311 (2d Cir. 1925); Coffin v. Ogden, 85 U.S. (18 Wall.) 120, 21 L.Ed. 821 (1873). However, the mere fact that the device was made in a laboratory or the like is not a reason for classifying the work as an experiment as opposed to a reduction to practice as long as the device is made so as to have practical utility. Corona Cord Tire Co. v. Dovan Chemical Corp., 276 U.S. 358, 48 S.Ct. 380, 72 L.Ed. 610 (1928). Once a device is actually built satisfactorily for the intended purpose, it is more than an experiment and is a part of the prior art even if it is later abandoned. Buser, et al. v. Novelty Tufting Machine Co., 151 F. 478 (6th Cir. 1907). The #212, #220 D.C. and #220 A.C. relays were each completely constructed and tested sufficiently to demonstrate their utility as relays prior to the invention of the patentee, and thus each of these relays may be considered as properly reduced to practice at that time. The modified #212 relay, though reduced to a drawing prior to the invention of the patentee, was not completely constructed at that time due to problems in obtaining a proper material for the header. Thus, the modified #212 relay was not reduced to practice prior to the time of the patentee's invention and may not be considered as a part of the prior art for the purposes of showing lack of novelty in the patentee's device.

■ The prior knowledge or use in order to negative novelty must also be accessible to the public. The leading case in support of this proposition is Gayler v. Wilder, 51 U.S. (10 How.) 477, 13 L.Ed. 504 (1850), in which it was held that a safe containing certain non-evident construction features, which was used by the builder and then sold to a purchaser who was not informed of the non-evident features, was not a device which could be relied upon as prior knowledge, since the knowledge was not accessible to the public. Even if the nature of the device is such that the contested features are evident from the device itself, the prior knowledge will not be anticipatory if it has been kept secret by an actual and deliberate effort. However, mere exclusion of the public from the factory is not secrecy if use of the device is made in the factory in the regular course of business. Standard Automatic Mach. Co. v. Karl Kiefer Mach. Co., 18 F.2d 326 (S.D.N.Y.1925), affirmed 18 F.2d 331 (2d Cir. 1927). The #212 and #220 D.C. relays clearly meet these requirements since they were openly made in the factory in the regular course of business and were freely shown to prospective customers. The #220 A.C. relay also meets these requirements since it was openly made in the factory and a working sample was delivered to the Air Force. The fact that each of these three relays is customarily mounted with its working parts in a nontransparent container should not serve to confuse this case with the problem of Gayler v. Wilder, supra. In the instant case the relays were sold or delivered to persons who were actively interested in the construction of the relays, and it may be logically assumed that they investigated the relays sufficiently to ascertain their exact construction. The modified #212 relay here again does not meet the requirements for prior knowledge since it was maintained as a secret under a "restricted" security classification. With regard to the #220 A.C. relay, a recent case held that submission of a report to a Government agency was not enough alone to constitute prior knowledge. Rem-Cru Titanium, Inc. v. Watson, Commissioner of Patents, 152 F.Supp. 282 (D.D.C.1957). That case is distinguished on its facts since there the prior knowledge was a written document as opposed to a completed device. The District Court based its decision on the rule of law governing the date on which an article submitted to a publisher is deemed to have been made public.

■ Finally, prior knowledge or use in order to negative novelty must be of the same device from a patentability viewpoint with a clear identity between the prior knowledge or use and the patentee's invention. Greenwald Brothers v. La Vogue Petticoat Co., 226 F. 448 (2d Cir. 1915). It is not necessary that the prior knowledge be of the identical device if the differences between the patented device and the prior art device are not patentable distinctions. Pennington v. National Supply Co., 95 F.2d 291 (5th Cir. 1938). There is a clear identity between the #212 relay and the principles of the Somers relay. The only differences between the #212 relay and the Somers relay are minor and such as would not amount to a patentable distinction. As will be discussed in more detail below, the #220 D.C. and A.C. relays actually anticipate one of the features of the Somers relay which is different from the #212 relay. Thus, even if this difference is treated as a patentable distinction, the #220 D.C. and A.C. relays negate its novelty.

■■ A separate issue has been presented regarding the allegation that even if the Struthers-Dunn #212, #220 D.C. and #220 A.C. relays are considered as proper members of the prior art, the distinctions between these relays and the Somers patent relay still amount to a patentable invention. As noted in finding 26 below, there are two differences between the #212 relay and the Somers relay, namely, (1) the #212 relay has only one set of switching mechanisms, whereas Somers claim 5 requires a plurality of duplicate sets of switching mechanisms; (2) the #212 relay has the armature on substantially the same level as the pair of terminals and the spring contact member, whereas Somers claim 5 recites terminals and spring contact members as being in the space between the armature and the support member. Referring to the first distinction, it has been held that duplication of a part

from a known device in a subsequent device does not of itself make the subsequent device patentable. Alco Kar Kurb, Inc. v. Ager, 286 F.2d 931 (3d Cir. 1961); Bryan v. Garrett Oil Tools, Inc., 245 F.2d 365 (5th Cir. 1957); Lewis E. Hamel Co., Inc. v. P & K, Inc., 185 F.Supp. 278 (E.D.Ill.1960). This difference is clearly of the type which would be within the purview of one having ordinary skill in the art, and hence would fall within the prohibition of 35 U.S.C. § 103, which reads in part as follows:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

Turning now to the second distinction, again it would be obvious to one having ordinary skill in the art to raise the armature sufficiently to allow the pairs of terminals and the spring contact member to lie in the space between the armature and the support member. The prior art actually suggests this arrangement when it is desired to place more than two sets of switching mechanisms on the relay. This arrangement is shown in the Struthers-Dunn #220 D.C. and A.C. relays, the Cole patent, and the Lazich patent. It would not require invention, for one having the above-mentioned prior art before him, to modify the Struthers-Dunn #212 relay to eliminate the differences between it and the Somers relay. It is found that claim 5 of the Somers patent is anticipated by the prior art and is *invalid*.

■ A further issue was presented regarding the interpretation of an ambiguous term in a claim. Claim 5 re-

954

cites fingers "secured at opposite sides" of the armature. This term "sides" may be interpreted in several ways, each of which is consistent with the specification and drawings of the patent. In such a situation, it is proper to refer to the application file of the patent to determine what meaning should be given to the term. Goodyear Dental Vulcanite Co. v. Davis, 102 U.S. (12 Otto) 222, 26 L.Ed. 149 (1880); Mall Tool Co. v. Quaker Vibrators, Inc., 30 F.Supp. 841 (E.D.Pa. 1939). As is pointed out in findings 35 and 36 below, a study of the application file indicates that the meaning intended by the patentee and the examiner for the term "sides" in claim 5 was sides as opposed to top, bottom, or ends. Hence, this is the meaning which must be imparted to the term in this suit.

Another issue presented in this case is the breadth or scope to be accorded patent claim 5 even if it were found to be valid. Specifically, claim 5 requires that the relays have "fingers secured at opposite sides of the armature." Plaintiff alleges that the exact location of the fingers is not the inventive feature of the claim, and hence the defendant should not be able to avoid infringement merely by placing the fingers on the top, bottom, or ends of the armature. The Somers patent, which is not for a pioneer type invention, is located in a crowded art. The claims have been restricted during prosecution to distinguish over the prior art disclosures cited by the examiner. In such a situation the claims must be narrowly construed, and the limitations and restrictions must be considered as necessary and material. Connecticut Paper Products, Inc. v. New York Paper Co., 127 F.2d 423 (4th Cir. 1942). If a valid patent issued, contrary to the findings herein made, then it must be limited to the precise structure disclosed and claimed. Simmons Co. v. A. Brandwein & Co., 250 F.2d 440 (7th Cir. 1957). Somers claim 5, even if it were valid, must be restricted to covering only relays in which the fingers are secured at opposite sides of the armature.