**HI–LIFE PRODUCTS, INC.,**
Plaintiff–Appellant,

v.

**AMERICAN NATIONAL WATER–MAT-TRESS CORP.,** Defendant–Appellee.

No. 87–1587.

United States Court of Appeals,
Federal Circuit.

March 17, 1988.

Harold L. Jackson, Jackson & Jones, Tustin, Cal., argued for plaintiff-appellant. With him on the brief was Stanley R. Jones.

John W. Chestnut, Tilton, Fallon, Lungmas & Chestnut, Chicago, Ill., argued for defendant-appellee. With him on the brief was Vasilios D. Dossas.

Before MARKEY, Chief Judge, and DAVIS and BISSELL, Circuit Judges.

BISSELL, Circuit Judge.

Hi–Life Products, Inc. (Hi–Life) appeals from that portion of a final judgment of the United States District Court for the Central District of California providing that "[n]one of [American National Water–Mattress Corp.'s (AM–NAT)] waterbeds infringe [sic] [Hi–Life's United States Letters] Patent No. 4,411,033...." *See Hi-Life Prods., Inc. v. American Nat'l Water–Mattress Corp.*, 2 USPQ2d 1886 (1987) (order granting AM–NAT's partial summary judgment motion, entered March 31, 1987 [available on WESTLAW, 1987 WL 16879] and final judgment entered July 30, 1987). We vacate and remand.

## BACKGROUND

The 4,411,033 ('033) patent describes and claims a waterbed mattress containing a wave dampening structure made from an insert of open cell foam that has a material of low specific gravity disposed throughout its body. The open cells in the foam trap and restrict the movement of the water, thereby dampening excessive wave motion. To be effective in dampening the waves, the foam body must float at the top of the container. The inventor discovered and disclosed in the '033 patent that by adding a lightweight material to the foam slab, the resulting structure would float and provide excellent wave dampening characteristics.

The '033 patent, assigned to United Foam Corporation (UFC), issued October 5, 1983. UFC filed for bankruptcy in 1986. AM–NAT and Hi–Life both submitted bids for UFC's assets, which included the '033 patent. Hi–Life was the successful bidder, but even before the transfer of the assets to Hi–Life was completed, AM–NAT commenced marketing a waterbed mattress similar to the waterbed mattress disclosed in the '033 patent.

Shortly thereafter, Hi–Life filed suit against AM–NAT, alleging, *inter alia*, infringement of the '033 patent. Both parties filed motions for partial summary judgment on the issue of infringement. In a March 31, 1987 order, the district court granted AM–NAT's motion for partial summary judgment of noninfringement and denied Hi–Life's cross-motion. In that order the district court found that the accused devices did not literally infringe the '033 patent. The court, in addressing the issue of infringement under the doctrine of equivalents, reasoned that prosecution history estoppel precluded application of the doctrine. After the district court allowed both parties to dismiss the remaining issues without prejudice, final judgment of noninfringement was entered on July 30, 1987.

## ISSUES

1. Whether the district court clearly erred in finding that the accused waterbed mattresses did not literally infringe the '033 patent.

2. Whether the district court erred in holding that Hi–Life was estopped from contending that the accused waterbed mat-

tresses infringed the '033 patent under the doctrine of equivalents.

## OPINION

### I

[1] Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1116, 227 USPQ 577, 581 (Fed.Cir.1985) (in banc). "[T]he district court must view the evidence in a light most favorable to the nonmovant and draw all reasonable inferences in its favor and must resolve all doubt over factual issues in favor of the party opposing summary judgment." *Id.* (citations omitted).

On appeal, Hi-Life argues that AM-NAT's waterbed mattresses literally infringe claims 1, 12, 16 and 21–28. Literal infringement requires that the accused waterbed mattresses embody every limitation of the asserted claims. *Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.*, 757 F.2d 255, 257, 225 USPQ 240, 241 (Fed.Cir.1985). Here, the district court correctly determined that AM-NAT's waterbed mattresses did not literally infringe the claims of the '033 patent because the open cell foam insert did not have a material of low specific gravity disposed throughout its body. Instead, AM-NAT's foam insert floats because a sheet of low specific gravity material is attached to the bottom surface of the foam body. *Hi-Life*, 2 USPQ2d at 1887 [available on WESTLAW, 1987 WL 16879]. After reviewing the record and carefully considering Hi-Life's arguments with all reasonable inferences drawn in its favor, we agree with the district court's decision on the issue of literal infringement.

### II

The district court never reached the issue of infringement under the doctrine of equivalents. Instead, it concluded as a matter of law that Hi-Life was estopped from contending that AM-NAT's waterbeds infringe under the doctrine of equivalents because the claims were rejected by the patent examiner as unpatentable until amended to describe a material of low specific gravity disposed throughout the body of the foam. *Id.* We disagree.

■ The doctrine of prosecution history estoppel precludes a patentee from asserting equivalents that would resurrect subject matter given up during prosecution to overcome rejections based on prior art. *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1362, 219 USPQ 473, 481 (Fed.Cir.1983). When the doctrine "is invoked, a close examination must be made as to, not only what was surrendered, but also the reason for such a surrender." *Bayer Aktiengesellschaft v. Duphar Int'l Research B.V.*, 738 F.2d 1237, 1243, 222 USPQ 649, 653 (Fed.Cir.1984). At issue here are the equivalents that the patentee gave up by adopting the examiner's proposed amendment. We have rejected the view that all amendments to claims operate as an estoppel in finding infringement under the doctrine of equivalents:

> Amendment of claims is a common practice in prosecution of patent applications. No reason or warrant exists for limiting application of the doctrine of equivalents to those comparatively few claims allowed exactly as originally filed and never amended. Amendments may be of different types and may serve different functions. Depending on the nature and purpose of an amendment, it may have a limiting effect within a spectrum ranging from great to small to zero.

*Hughes*, 717 F.2d at 1363, 219 USPQ at 481.

■ During prosecution of the '033 patent application, the examiner rejected the claims set forth as unpatentable based on a number of prior art references, including non-waterbed art that taught disposing a lightweight material in an open cell foam structure. In a telephone interview, however, the examiner determined that it would not have been obvious to use such a prior art structure as a wave dampener in a waterbed mattress. The examiner suggested amending independent claim 1 to add the following language: "a material of low specific gravity disposed throughout its

body, said material of low specific gravity causing the foam to float in the liquid, above the bottom wall of the container, close to the top wall of the container." Claim 1 was duly amended and independent claim 26 was similarly amended, adding almost identical language. Thereafter, the '033 patent issued.

In this case, we cannot agree with the district court that these amendments preclude Hi–Life from asserting infringement under the doctrine of equivalents. Here, the patentee did not amend the claims to avoid cited prior art, but rather to better define a patentable invention. The limitation of disposing a lightweight material throughout an open cell foam was old in the non-waterbed art and did not in itself render the claims patentable. Accordingly, prosecution history estoppel was not created by the mere presence of the "disposed throughout" limitation in the claims. We have reviewed the other prior art of record and can find no reference that would support the district court's holding. Therefore, the amended claims are entitled to some range of equivalents. We leave the breadth of that range to the district court's determination.

## CONCLUSION

We agree with the district court's analysis that none of the accused devices literally infringe claims 1, 12, 16 and 21–28 of the '033 patent. However, we must vacate the judgment of noninfringement of the '033 patent because the district court erred in its application of prosecution history estoppel. We remand for a determination of whether there is infringement, under the doctrine of equivalents, of claims 1, 12, 16 and 21–28 of the '033 patent.

### VACATED AND REMANDED.

DAVIS, Circuit Judge, dissenting.

I would affirm on the ground that the prosecution history prevents Hi–Life from showing that there was infringement under the doctrine of equivalents.[1]

When the examiner agreed to amend claim 1 to include a "limitation of low specific gravity material disposed throughout the body of the foam baffle (or wave dampening device)" he expressly added that this limitation "is not taught by the prior art *and renders the claims patentable*" (emphasis added). To me this means that that limitation was a *sine qua non* for allowance of the claims. As such, the limitation is a necessary, integral part of the prosecution history and governs the application of the doctrine of equivalents. It is also plain to me (as it was to the district court) that the alleged infringer's device does *not* meet that limitation because the infringer's sheet was not disposed throughout the baffle (as demanded by the very limitation which the examiner thought made the claims "patentable"). Hi–Life fully accepted this amendment though it had the choice to reject it and to appeal to the Board of Appeals. By accepting that limitation, Hi–Life made it a full, necessary and integral part of the claims.

Accordingly, my view is that the district court correctly held that plaintiff Hi–Life "is estopped by prosecution history estoppel from interpreting the claims of Patent No. 4,411,033 in a way which would cover defendant's [ANWMC's] waterbeds."

---

1. I agree with the majority that the district court correctly determined that AM–NAT's waterbed mattress did not literally infringe the asserted claims of the '033 patent.